This morning is 14-1187 KI Ventures v. Fry's Electronics. Mr. Ramey, are you ready? Good morning, Chief Judge Prose, Judge O'Malley, and Judge Hughes. My name is Bill Ramey. I represent Appellant KI Ventures. The police of the court may have again. Today we're seeking reversal of the district court from the Southern District of Texas of the patent infringement case by KI Ventures against CTA Digital and Fry's Electronics for three reasons. First, KI did comply with the district court's orders. Secondly, even if those courts that KI did not comply or substantially comply with the district court's orders, KI reasonably complied with the specific orders given in this case. And third, lastly, the district courts dismissed the action under Rule 11 in the inherent powers of the court, neither of which provided the sanction of dismissal. There are other sanctions that are more appropriate, and that's what the court should have used. Can I just ask you some specific questions about these claim charts that you gave us? And I know they're variations. I'm specifically referring to the appendix A-221 through 2223-whatever. In these charts, on several of the limitations, you say, you give a reference number, and then you say plaintiff relies on the doctrine of equivalence to this element. And you say that about several of the limitations. Do you appreciate what I'm referring to? Yes, Your Honor. It was unclear to me whether or not this was an alternative, whether you were claiming literal with respect to these limitations and DOE as an alternative, or whether or not the sum and substance of your position with respect to this was the DOE. Your Honor, we were claiming both literal and doctrinal equivalence at this point. Part of the problem we had is that following the court's order, starting with an order on infringement – pardon me, starting with the order on claim construction, going to the order on confusion, going to an order on infringement, going to the show cause hearing order. With the KI, we originally tried to comply with what the court was requesting, but we found it hard to see what exactly the court wanted of us. That's why we requested on three different occasions to have a hearing to get this straightened out, to set a claim – But wouldn't it be appreciated if you were going to allege a doctrinal equivalence element that you would have to give some specificity with respect to why there was a DOE claim here? Yes, Your Honor. And you would do that? Yes, Your Honor. You're referring to, I guess, element number seven of claim number one? Well, it's all over. I mean, it's in claim two. It's the claim for – I mean, DOE is claimed for a large number of these limitations, right? Yes, Your Honor. So if you look at the – if you go to the exhibits, what they're pointing at, the exhibits in the back, which they – in the section that you're looking at, begin at A – Exhibit E or Exhibit F? Which exhibit? Exhibit A, Your Honor. Oh, Exhibit A. Okay. 24039, my apologies, Your Honor. I have that. When we start talking about the doctrinal equivalence of those particular elements, that references back to where that element comes from, what the construction is, and then it points to the pictures on the guns itself or on the toy guns itself as the district court said. So we do think we did provide adequate structure. It's pointing to the buttons, pointing towards the multi-axis controllers, and pointing to the stock, the trigger, the trigger switches, or the hand grips. Yes, but how does that – I mean, in all kinds of different contexts, we say, you can't just give a bald assertion of DOE. You have to explain, and you can't even say in a conclusory fashion, function – same function way result. By your pointing to a part of this gun, for instance, reference numeral 12, how does that give us any information with respect to the DOE analysis, the function way result? And, Your Honor, if I may go – I'm looking now at, like, 234. I'm just picking examples because, as I said, DOE is playing for a lot of these. Okay, Your Honor. Okay, 234. Pardon me, Your Honor. I'm on 234. 234, you have – for Claim 2, you refer to DOE. For Claim 4, you refer to reference numeral 10. For Claim 4, you refer to reference numeral 12. And in both respects, you just give us DOE. Yes, Your Honor. So let's start with the last one you gave for Claim 4. It says, if we look to the element of the claim, it says, a controller is in claim to including means for forced feedback to the user after a trigger switch is actuated whereby the controller stimulates the recoil of firing of a rifle. At this early stage of the litigation, we only had these pictures on the website to look at. We knew we had all too many of these weapons you saw from the briefing that we brought these in the court and displayed them before the show of cause hearing, that we could only tell at this point that the gun vibrated when you pulled the trigger. That's what we said there. Reference numeral 12, the gun vibrated, the controller vibrated. So it says the game controlled the gun itself when you pulled the trigger. That's what that's indicating, Your Honor. And that, I think, is adequately explained at this point in the litigation. So in picture 239, 12 is the game controller plugged into the gun? Yes, Your Honor. At that point, the game controller vibrates. No, I understand the game controller vibrates. It's hard to tell from these pictures. But 12 is actually like a game controller that then plugs into this. Yes, Your Honor. Actually, exhibit A from 239 is an independent unit that will control aspects of the game. So it does the firing, it changes the aspect, it does the vibrating. It also has an adaption feature, an additive feature, that you see these little ball units above the numeral 6, that's the move controller from one of the game's systems, that can be plugged on there as an add-on. So there's a second means. I see the little ball in front of this. This is where you can plug the Sony controller in. Yes, sir. One of the methods of infringement is this third-party controller that we put on there. But this unit, on its own, even without that, works on all the features. It's, in fact, plaintiff recognized in the briefing, which I believe is page 465, line 4, to page 447, line 15, where they recognized that that controller had all the elements that we were alleging. And I think that's the most important part of this appeal today. Well, let me ask you. I mean, there was some charge that somewhere between one of the orders and the other order, you didn't have the numbers on it, and then you submitted something else that included the numbers on these photographs, right? Yes, Your Honor, there was. All I can say is that I submitted a declaration in the briefing at A182 to 184 that clearly says we submitted graphs with the reference symbols on there. Is there anything you ever submitted that put a name to what these various parts are? Pardon me, Your Honor? That named what these various parts are, the arrows and pointers. Yes, Your Honor, we think that when we began from the two charts we presented, we began from having, we talked about... So is there a chart that has photographs similar to the ones, Exhibit A through Exhibit F, that actually named the parts of this device? Not beyond the two charts we submitted with those exhibits. So we submitted, first we submitted a chart that identified on an element-by-element basis the claims of this invention. We offered a proper construction and the support and the specifications from which we got that proper construction. Right, do you understand my question? My question may be just too simple for where you are, which is, was there an exhibit submitted that had the same photographs of this accused device and named what the various parts are, other than just the numbers? Your Honor, no, other than putting the numbers, the numbers refer back to the charts that go through the analysis. So a weapon-shaped body, for instance, is reference numeral two, right? A body having a stock, reference numeral three. Is that what you're talking about? Yes, Your Honor, reference numeral two. And that's how we did that. All right, let me ask you this. I completely understand your confusion with respect to the court's first order because usually it does make sense for you to have a separate claim construction order. Obviously the judge didn't seem to appreciate that. But once the judge said it's not enough for you to just give me numerals, why didn't you provide a little more explanation of what those numerals were and rather than just tie them into the claim language, why not say this is the numeral on this weapon that would be the ball, for instance, or the weapon-shaped body or the body having a stock? Yes, Your Honor. So what we tried to do and that's when the judge said and actually what you're referring to is that we're on a confusion where the judge said respond, please, by providing precisely how CTA's devices infringe. They said, well, of course, infringement's a separate step in everything. We don't even have a claim construction. So what we were doing was our proper construction, comparing it by identification in our chart, putting more than just bare reference numerals and identification of what we were referring to in that chart and then presenting that back to defense. The court didn't even open up discovery for us in this case. So we're solely relying off the downloads from the Internet, these pictures that are available on the website. Well, I mean, even under the local rules that he refused to follow, infringement contentions usually come before discovery. I mean, they can be amended during discovery or after discovery, but you have to have infringement contentions. I mean, you've got to know what you're talking about before you can file a complaint. Yes, Your Honor, and that's why we identified, we put out seven of these devices sold by CTA. We identified the parts that correspond to the reference numerals on the bodies of the weapons. If we point to a trigger switch, we use a number such as number five. And trigger switch, the other side knows what we're talking about. In fact, remember, in the Southern District of Texas, infringement contentions, at least in the Eastern District of Texas, are meant to put a party on notice of what the infringement theories are. And this court has said infringement contentions are to prevent the shifting stance analysis of infringement theories. So infringement contentions to us have very defined meanings. When the judge didn't go forward with the Southern District of Texas rules, which we think he should have in this court, actually reviews on the abuse of discretion standard, it made it more difficult for us to figure out exactly how to comply with the court. It made your life a lot easier. I mean, I understand what you're doing. You're constraining your claim language and saying the claim requires, just for an example, a first trigger switch and a second trigger switch. And then you point to the device and just put the numbers where these two are. But why didn't you just put, say, number five is the first trigger switch corresponding to our claim, number six is the second trigger switch, instead of just using numbers? Fair point, Your Honor. So how we did that was if you reference the two charts together, we felt that was exactly what it did. I see that that's what you did, but it seems like it would have made your life a lot easier with this judge if you would have actually used words instead of numbers. Yes, Your Honor. Thank you for the criticism. What I think, actually, what we tried to do then, when we got this file and we got the order on infringement, the third change in order in this series of three orders that requires something else, we stopped everything and we looked at what we had done. And we submitted it on 9-16, September 16, 2013. We submitted a revised set of infringement petitions by noon as the court ordered, three days after the order. And we submitted it to CTA Digital. They didn't complain that they didn't understand what we were alleging at any point. And I appreciate what you're saying, that a lot of your obligations have to do with what the other side needs to be told and what the other side needs to know. But there's another actor in this drama, and that's the judge. And so it's just because certain obligations flow between you and your friend on the other side does not mean that the judge isn't entitled to, at a minimum, get his questions answered if they're basic questions. It's not enough to say, I think, well, the other side seemed to know what we were talking about, so that was sufficient. Yes, Sean, and I agree. We were trying to comply with the court's order. In fact, that's why we put the brakes on. When the other side filed on October 7th, they filed a claim construction brief, which the court hadn't requested. At that point, by our minds, we asked for a hearing. The court denied it on October 10th, when he issued the show-cause hearing order for November 15th. And in between that October 10th deadline and the November 15th deadline, we put together, what more can we do to help the court, is what we asked ourselves. We put together a video, and the video is part of the supplemental video record for this appellate court. And we said, okay, we're going to have a user, not one of us, use these. Actually, I don't know how to, as well as the kids do, is why we had the kid do it. But he actually demonstrated how every one of those buttons functioned, and we did a walking-through analysis of this, of the infringement contingent, so that every reference numeral would be further explained beyond just the graphs here. Did you know that dismissal of prejudice was on the table when you got the notice, when you went to the notice of show-cause hearing, or did that just come up at the end? I can't remember either. Your Honor, it was— When that was first raised. My apologies, I did not mean to interrupt. No, I just wondered when that was first raised at the public. We did not know dismissal of prejudice had been on there. In fact, after the order was issued from the hearing, when we went back, we hadn't heard that it was with prejudice at all from the transcript. When we received the order from the court, we saw that he did do it with prejudice, which actually dovetails nicely kind of into the second part of this argument, that the court's inherent powers aren't unlimited, that they're very defined. They're to allow the court to orderly keep the trial progressing, correct? There's a lot of things to have. But here, Rule 37 analysis should have been made onto whether or not a discovery violation, whether or not dismissal was appropriate. It's not really a discovery issue, though. I mean, I understand your argument that the principles under Rule 37 might also apply here. But he never said this was a discovery issue. This was just a violation of court orders. And, you know, as irrational as it can be, a court can say, you've got to show up in my chambers at 6.30 a.m. on December 24th or 25th, and if you don't show up, it's a court order that's being violated, right? Yes, Your Honor. All right. So let's look at the facts and factors that the Fifth Circuit would use in this particular case. And they're going to look at the first four factors primarily. They're going to look to see whether the noncompliance was from a willful act or deceit. And, of course, I would tell you that this was not willful. We modified our behavior every time we got a new order from the court. We attempted to comply. The second factor being whether or not a separate less sanction than a dismissal would be more appropriate and achieve the same results. But your friend on the other side argues Batson doesn't apply to anything other than Rule 37 violations and wouldn't apply under the court's inherent authority to enforce its own orders. Right. And the court has said over in the Fifth Circuit, especially has said over, that inherent authority isn't a broad authority of the court. It should be narrowly construed when there's not other rules to apply. And that's the way we take that. So even if the court doesn't say it says an inherent authority would apply, the same factors should apply. This court should go through the same analysis and determine whether a dismissal sanction was appropriate. And those would be the four Batson factors that we were talking about a moment ago. And I'd like to reserve the last few seconds for a little timeout. What exactly are you asking us to do? Do you want us to send it back, reinstate the case? Yes, Your Honor. Just to send it back and send it back with the infringement contentions as alleged or to request that the parties submit new infringement contentions. But yes, that's what we're asking for, the relief. So send it back to Judge Hughes in the Southern District of Texas. And what about if he says, well, OK. I mean, if we conclude that there's something, not necessarily that he didn't have any authority to do any kind of sanctions for the conduct here, but that it went too far in these circumstances to dismiss with prejudice. Do we say, but you get a do-over in terms of the relief if you might want to apply with respect to your notice to show cause, or do we just tell him, no, that part of this is over, and you've just got to go ahead and proceed with the case? If you remove the with prejudice from the dismissal, that would be something we'd be acceptable to do to refile the case. We'd be more than we'd be pleased to refile the case if this court felt that was more appropriate. Does that answer your question, Your Honor? Yes, thank you. OK, we'll leave you for a couple minutes to rebuttal, and I'll let you hear what you have to say. Mr. Berger. Good morning, Chief Justice Barros, Judges O'Malley and Judge Hughes. I guess I'd just first address the question you asked of Mr. Ramey. This case began in May 2013. This is August 2014. We have never, ever received from plaintiffs a detailed explanation of why there is a case for infringement. Between May and July... Well, August 2014, the case was dismissed a year ago, so... Do you expect them to be giving it to you now? Do you expect them to be giving it to you between November and now, when the case was dismissed with prejudice? No, no, no, I'm sorry. 2013, the case began. We did what we always do. We tried to talk to opposing counsel, understand their case. We provided pages of detailed reasons why we thought there was no case. And the response was, I don't agree. I don't agree. That was it. Went to Judge Hughes in August. At that hearing, I said... But ultimately, you got these charts. Ultimately, there has been no... No, no, no. You got these charts, right? Oh, sure. Sure, we did. What do you find insufficient about these charts? These aren't really all that complicated of patent claims, and they're pretty obvious kind of guns into how they work. I mean, you may quibble with their claim construction, but assuming that this is their contention, that this is their construction of the claim, and it requires a first-trigger switch and a second-trigger switch, and they point to where on your device they think you have a first-trigger switch and a second-trigger switch, what else do you need? Well, I would say there are two points to this. If we got an honest discussion of infringement, alleged infringement, they would have had to address an absolute failure that patent attorneys can talk about before we get to court of 112th. The central part of their invention is something called a move controller. Two of them. Wait, wait. 112th, the court never lets you get anywhere close to that. My explanation as to why I have not gotten an intelligent, rational explanation... and look at their narrative description of what they think their claim says and then refer it to the numbers on the infringing items and make the leap between this is their claim, this is where they think your device infringes. Certainly we can. Why isn't that enough? Well, there are two reasons. Because we never got what you would say would be a discussion on that. What about the videos? I mean, the trial court never even looked at them, but the videos actually are pretty good. The videos is a fundamental failure. The fundamental failure in their case, in their entire case, is what they claim is the heart of their invention. There is absolutely no disclosure of how to construct, build, or do it. These fundamental move controllers is the only reference... I'm saying there's not enough of a disclosure in the specification, but that's a different animal. I agree with you. One of my problems is I think you played on the... The order on confusion is pretty funny because 20 years on the bench, I've never occurred to me to name something an order on confusion, and it seems like it was the judge's confusion more than the plaintiff's confusion and that you were playing into that. Because the judge's first order was do a claim construction chart, not an infringement contention, do a claim construction chart. They did that. And then the judge... You said, oh, judge, that's not what you told him to do, even though that is what he told him to do. So you were trying to tell the judge that he'd done something different the first time around, went on his face. It was clear it was a claim construction chart that he ordered. How do you justify telling the judge that they three times violated his orders when the first order had nothing to do with infringement contention? The purpose of what you do at that early stage is to try to reduce the narrow issues between the parties to make it easier for the case to progress. You're correct that the 112 absolute defense issue doesn't necessarily come up in the beginning, but between experienced practice patent attorneys, it often does. Well, an experienced patent attorney understands that the claim language is what is important when you're trying to decide whether or not there's infringement because you have to read on the claims. The trial court judge here said, don't refer to the claim language when you're talking about infringement. How can an experienced patent attorney respond to that? That's like somebody playing Monopoly going around the board backwards. I think, Judge, there are really two parts here. I'm just the lawyer, and K.I. owes me no explanation. I can stand on my head. They don't have to answer a question I want. Judge Hughes is the judge. He has a right to say, I need to have an explanation I can understand to allow you to begin to litigate this case and take discovery and spend money and require the defense to spend money. It's a fair question to ask. I don't think it's very hard. Every time the judge was telling them to do something, it was in response to motions from you telling the judge that you weren't understanding anything that was going on. Well, I'll put it this way. The truth is, yes, I do not understand their infringement contention bottom line. That's true. But you do understand these charts. I do understand these charts. You just think that that's not enough to win their case. No. That's enough to understand their contentions. We need to... You understand their contentions. You just probably would have moved for summary judgment or something like that. I don't think we could have moved to summary judgment at that time because the 112 defense needs a little more development than that and costs a little more money than that. So I don't think we could have moved... But you understand their contentions. If this chart is clear enough to understand their contentions, what's the problem here? The problem... You could have moved forward with the case. I don't think so. I don't understand what you're saying, Judge. What else do you need to know to move forward with the case and do discovery? I need to have rational explanation with words as to what is alleged to be infringed, where it is in the patent application, where it is in the patent, and we can respond. That's what I need. How is that not in those claim charts? It says they go claim by claim, break out the language piece by piece by piece, and then give you a corresponding number on the accused's devices with photographs and then a video of how it works. Yes, you might think that that's not enough under 112-6, but you haven't even gotten there yet. Well, I really... I don't know how to answer your question because Judge Hughes runs his court. He has a right to run his court. He has a right to insist the parties before him answer his questions. He issued an order. He issued an order. What do you think would have properly answered his question? I'm at a loss to why these charts aren't sufficient. I mean, maybe, as I suggested to your friend, they could have repeated in the second part of the column, reference number one is the weapon-shaped body, but it says weapon-shaped body over here, so when you say, sorry, reference number two, it corresponds to that. Why do they need to repeat reference number two is the weapon-shaped body? I mean, any person reading that can see that that's what they mean. I don't know what else. What do you think would have satisfied the judge? Judge Hughes specifically said, do not give me reference numerals with arrows, explain. Do not say doctrine of equivalence, explain. When they responded... How can they make infringement contentions based upon the doctrine of equivalence without telling the judge they're making infringement contentions based on the doctrine of equivalence? But can't they explain what the equivalents are? He asked him, explain what are the equivalents. What do they have? What is in your claim? That's a fair point. I think they could have done a better job sometimes on that. But on the literal stuff, what else do they need to do beyond saying, if the claim is for a first trigger switch and a second trigger switch, point to the places on your devices that say this is the first trigger switch and the second trigger switch. Is it that they needed to use words instead of numbers? The judge was asking them to use words and numbers in conjunction. One of the things they said was, there are a number of buttons, the claim called for a series of buttons, and he said they were somewhere on the device. Do you know which limitation you're referring to? Your Honor, I really don't because I... It was one of the... I can't reference it for you now. But it was just one of the elements in the claims that was buttons, and he said there are many elements that satisfy this limitation. That was in the claim chart. Many elements that satisfy the limitation without any identification of what they were. I don't know how much clearer... Well, there might be, if there were one or two places where you thought a better explanation was needed. Why not say, I get all the rest of this, I just don't understand this, instead of taking the judge down a road to somehow believe that the claim language wasn't pertinent to the infringement contention? Well, I guess what I'd say is at the opening hearing, I was on the phone from New York, and Remy was there. And in the conversation, which is in the record on the transcript, I did say, I can't seem to get explanation, an explanation, conversation between counsel to what they're talking about in detail so we can respond. We provided detailed comments based on the initial charts. This isn't infringed, this isn't there, that's not there, a number of very specific references. And the response was, I don't agree. There was never a meritorious response to any position we took on any aspect of why the plaintiff was allowed to be in court. Now, you, Judge Hughes, didn't get involved with that level of detail. Patent attorneys do that with each other. I couldn't get anywhere. So at the opening hearing, I raised the fact, I couldn't get anywhere, I don't have... But that's all precursor to these very detailed charts. Why does that matter? It's either from the chart we had of our own. We looked at the claims, we looked at patent attorneys, we looked at claims, we looked at our devices. We analyzed every single gun. So you're telling me that after you got this second round of charts in the video, you went back and said, there's still things that we don't understand and they wouldn't respond. At that point, Judge Hughes had said, I mean, we couldn't get any responses to our questions. It seems to me that you're not objecting to their failure to make contentions. You're just saying that because you don't agree with their contentions, that therefore dismissal is appropriate. But that's something that gets resolved by summary judgment or ultimately at trial. Whether you agree or disagree, first you have to know what their contentions are. You have to have a discussion. I mean, it's one thing to say... But on these charts, you know what they are. Well, even if, say, there were one or two places where DOE, you didn't know enough, you knew 90% of it from these charts. So why, in that circumstance, is dismissal an appropriate sanction? Dismissal with prejudice. I mean, here today, you haven't even pointed anything specific on any of these charts you find insufficient. So if this chart is not insufficient, isn't it an abuse of discretion to dismiss this case at such an early stage with prejudice? Well, you know, as I said, I'm just a lawyer. I'm not a judge. Judges' powers to run this court and to ask for parties to do what he asks for in simple English is fair. It's fair to ask it. If we were to disagree with you, how do you propose this is handled in terms of remanding? At what stage? What do we tell the judge? And what is the posture of this case, then, when it goes back? I guess Judge Hughes would do some claim instruction work, perhaps. And there seems to be a dispute. I mean, you repeatedly rely on what seems to be a legitimate claim construction dispute, which is whether or not this multi-axis controller includes the doorstep. I mean, that's classic claim construction question, I'm sure. Thank you. Your Honor, just quickly. I want to take a half a second. For the elements of realized doctrinal equivalence, we've had a fair amount of discussion on that. The support we tried to get for those elements was found. And the patent from the reference symbols were referenced back. You're talking too fast for me to understand what you're saying. So you've got to slow down.   equivalence. I think it's fair to say that the patent from the reference symbols was found specification that we tried to get for what those elements are is described in the charts that talk about the Crawford claim construction, where we got that construction from. So the claim, that's where it says support and spec, and it refers to the figure. I don't know where you refer. When I see in the charts we were looking at earlier, 221 to 231, the references to DOE, what are you saying? That you gave them more than just this notation plaintiff relies on the doctrinal equivalence for this element? Yes, Your Honor. All we were trying to do was refer, if you go to the chart that begins at 217, actually, Your Honor, we talked about, when we're talking about those elements, the weapon-shaped body, we give all those various support and specifications for where that element came. So that's where we were talking about that. The elements were located. We didn't use words in that particular instance. Yeah, but DOE doesn't tell you. I mean, you point to something, and then you say DOE. But, you know, so what's the function? What's the way? What's the result? What's the equivalence? Well, we hadn't gotten to that part of the analysis. You're right, Your Honor, Judge O'Malley. And in fairness, Mr. Kruger's saying that he's been asking you for that for ages, even before the suit was instituted and before the first proceedings before the trial court. So why didn't you respond? We thought we had complied when we provided the support and specification for the elements we were alleging. We provided the function of what the device did. It was a vibrate. It caused the game piece to vibrate in one instance. It was a second trigger switch, whether in one instance it was a button, in one instance it was actually a second trigger, as we'd all kind of looked at it. So I don't understand. I'm the district court, and I'm sitting here, and I'm supposed to take what you've given me, and with respect to just the DOE portion of it, look at the reference number, and when you say DOE, then go back to this other chart, and then read everything you just list and the support and the spec. And that's supposed to lead me to appreciate and understand what the functional result argument is. And with the proper construction, that's what we were intending, because the court, through this entire procedure, had asked us to use plain language in describing what these things did. So that's what we're trying to do. Actually, we contend that had the Southern District of Texas patent rules been used, we wouldn't be here today, because it would have provided a clear framework for Mr. Berger and myself to work through these issues. Well, even under those rules, your infringement contentions have to be specific. They can't just say DOE. Right, Your Honor, but we weren't operating under those rules at all. Well, the judge clearly, it wasn't ambiguous that the judge wanted more or needed more with respect to what on earth. I mean, throwing around the term DOE wasn't helpful to him. Right, Your Honor, so we've added more words onto them. We provided support in the specifications. But what we did... You added more words onto that? I don't see those words. That's what we were talking about before. You just say the plaintiff relies on the doctrine of equivalence for this element. That's no more than saying DOE, right? Yes, Your Honor, except for what we were trying to do was to cross-reference that with the support from the specifications that that element came from. If that part of this court feels we weren't sufficient, that's... Yeah, I mean, not every trial judge tries thousands of patent cases. So why didn't you say, why didn't you, in writing somewhere, say, Judge, these portions of the specification relate to these elements that we think are satisfied or that there is infringement under DOE? We were trying to get past this preliminary phase of the litigation to get to that question. Then we anticipated fully in the next phase under the Southern District of Texas patent laws that we'd gone to more of a model like that in providing exactly those explanations. And that's what we were trying to get to. Yeah, but the question for us is whether or not the district court was within his discretion to say, this case isn't going forward until you give me some more. We've got to know what these allegations are about. Yes, Your Honor, and it's our contention that Rule 11 doesn't provide that vehicle because it's pre-filing considerations, of course. And the inherent power uses a Rule 37 analysis, even if this court determines that the inherent power would apply. So that goes to the scope of the sanction. So would it have been fine if he had awarded some attorney's fees to the other side? Yes, Your Honor. The court did discuss that during the show-cause hearing. And while we said that we didn't think that any sanctional activity had occurred, that would be a more appropriate sanction than the dismissal of this action would be. What about throwing out the DOE contentions? At this stage of litigation, given the orders of court, I feel that that would be a harsh remedy at this point. And what we tried to do, in my mind, I think that would be a harsh remedy. We tried to provide the support and specification. We tried to work through the issues with Judge Hughes from the district court, pardon me, to get to all the issues handled. And if we weren't able to do that to the court's satisfaction, that's why we did the video to show them. But look, in every case, in every instance, we went forward and said, here's what we're trying to do. We gave more, we gave more. We produced the video. He seemed to have missed the fact that he wanted an explanation in words, not in numbers and not in video. He wanted it in words. Yes, Your Honor, and that's why we made, when they filed this request on 9-16 to say that our infringement contentions submitted on 9-12 weren't, pardon me, their motion of asking for another, their infringement contentions weren't proper, we asked for a hearing. We asked for a hearing to understand what was going on, to try to get the court, to work with the court to figure out what the court wanted. And we weren't given that hearing to deny that and instead ordered this show cause hearing. And I'll leave it in the last few seconds, if I might, Your Honors, that if I've answered all your questions. Why don't we wrap it up? OK, yes, Your Honor. We tried to, in through A-217 to 245, a chart identifying the claim elements, support for the elements in the specification of the 019 patent, a proper construction of the element containing reverence. I think this is already well established in the record. And lastly, just if you go to the appendix 465-4 to 467-15, Your Honor, clearly when they supplied their contentions, why they don't think they infringed, they understood what we were asking. Thank you very much. Thank you. We thank both counsel for the case you submitted.